IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 04-74967 |
| SOUTHWEST HOSPITAL AND MEDICAL CENTER, INC. | CHAPTER 11 |
| Debtor. | JUDGE MASSEY |

### APPLICATION TO APPROVE EMPLOYMENT OF CORBETT A. PRICE AS CHIEF RESTRUCTURING OFFICER (THE "CRO") FOR THE DEBTOR AND KURRON SHARES OF AMERICA, INC. TO ASSIST THE CRO

**COMES NOW**, Southwest Hospital and Medical Center, Inc., debtor and debtor in possession in the above-styled chapter 11 case (the "Debtor"), and moves the Court to enter an order approving the employment of Corbett A. Price ("Price") as Chief Restructuring Officer to the Debtor, as well as Kurron Shares of America, Inc. ("Kurron"), to assist him. In support of the Application, the Debtor shows as follows:

1. On September 9, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtor has remained in possession of its assets and continues to operate its business and manage its property as debtor in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtor is a Georgia non-profit corporation that owns and operates an acute-care hospital (the "Facility") and a medical office building located at and around Fairburn Road in Atlanta, Georgia.

3. The Facility has a bed capacity of 125 licensed beds and provides, among other things, ambulatory, cardiology, endoscopy, pediatric, radiology, surgical, vascular, medical detox, outpatient, inpatient, and emergency care services.

4. The Debtor has determined that it is in the best interest of the Debtor, the estate, and the creditors that the Debtor retain Price and Kurron to provide the services set forth in

147893.doc

Exhibit "A" (the "Engagement Letter"). Price is being engaged to serve as Chief Restructuring Officer for the Debtor and to perform consulting and advisory services. Kurron will assist Price, who is the President of Kurron.

5. A firm resumé describing the qualifications and experience of Price and Kurron is attached to Exhibit "B". The fee schedule is set forth in the Engagement Letter. As stated in the Engagement Letter, the Debtor proposes to compensate Kurron on a weekly basis, subject to a final application and approval of the Court, according to the following fee schedule:

| | |
|---|---|
| Principals: | $300-$350 per hour |
| Senior Associates: | $250-$300 per hour |
| Associates: | $200-$250 per hour |

and reasonable and necessary expenses. Price and Kurron promptly shall provide copies of all weekly bills to the Debtor, with a copy to counsel for Medical Capital Management, Inc., and to the Committee of Unsecured Creditors (the "Committee"), if one is formed, or the Committee's counsel, if the Committee employs counsel. The Debtor will pay the weekly bills within 48 hours of submission, subject to final application and approval of the Court. The Debtor provided to Kurron on September 8, 2004, a retainer in the amount of $36,000.

6. The Debtor has selected Price and Kurron to provide these required services for the following reasons:

    (a) As set forth in Exhibit "B", Price and Kurron have experience in health care and hospital Chapter 11 reorganization cases and are well qualified to represent the Debtor.

    (b) Price and Kurron have extensive background and experience in working with hospitals in Chapter 11 cases and have the requisite skills and abilities to provide all of the services the Debtor requires and assist the

Debtor in proposing and confirming a viable Chapter 11 Plan of Reorganization.

(c) Price and Kurron are able to provide services promptly.

7. As further described in Exhibit "B," to the best of their current knowledge, Price and Kurron do not represent and do not hold any interest materially adverse to Debtor, its estate, the creditors, any other party in interest, their respective attorneys, and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, in the matters for which Price and Kurron are to be engaged. Accordingly, Price and Kurron are "disinterested persons" within the meaning of 11 U.S.C. § 101(14).

**WHEREFORE,** The Debtor prays for authority to retain and employ Price and Kurron to provide to the Debtor the services set forth in the Engagement Letter in accordance with the terms and conditions in the Engagement Letter, and for such other and further relief as may be just and proper.

This 9th day of September, 2004.

SOUTHWEST HOSPITAL AND
MEDICAL CENTER, INC.

By: /s/ Gregory K. Dixon
    Gregory K. Dixon
    Vice-President Finance and CFO

September 7, 2004

Dr. Johnnie L. Clark, PhD
Chair, Board of Trustees
SouthWest Hospital & Medical Center
501 Fairburn Road, SW
Atlanta, Georgia 30331

### RE: Agreement for Restructuring Management Services

Dear Dr. Clark:

This letter outlines the understanding between Kurron Shares of America, Inc., a Maryland corporation ("Kurron"), and Southwest Hospital & Medical Center ("The Company") of the objective, tasks, work product and fees for the engagement of Kurron to provide restructuring management services to the Company.

If the Company becomes the subject of state or federal bankruptcy or reorganization proceedings, promptly at the commencement of such proceeding the Company shall file with that appropriate court motions necessary to cause the court to approve this agreement.

### Objective

To serve as the Chief Restructuring Officer of the Company, reporting to the Board of Trustees, and to direct the Company in its restructuring efforts.

### Role of Chief Restructuring Officer

All of the Company's employees shall report to the CRO. The CRO shall have all authority to manage the restructuring affairs of the Company subject to the active direction of the Company's Board of Trustees, including without limitation the authority to compensate, reward, dismiss any and all persons at the corporate or subsidiary levels of the Company, with the approval of the Company's Board of Trustees. In addition, the CRO shall have full and complete authority over the Company's creditor relations, subject to the approval of the Company's Board of Trustees. The CRO shall be the sole responsible party for all communications, negotiations, and agreements with the Company's creditors, including, without limitation, the ability to settle or compromise creditor claims, subject to the approval of the Company's Board of Trustees.



EXHIBIT "A"

Dr. Johnnie L. Clark, PhD                                          2
September 1, 2004

## Duties Shall Include:

- Manage the Company's daily operations and restructuring efforts, including negotiating with parties in interest.
- Provide reporting and testimony to the Bankruptcy Court (the "Court"), as may be required, and develop Plan of Reorganization for the Company, subject to the approval of the Company's Board of Trustees.
- Oversee the Company's day-to-day operations, coordinate and manage the Chapter 11 process and communicate with customers, lenders, suppliers, employees, and other parties in interest.
- Develop and implement a business plan to rehabilitate the Company's business, through, among other things, the design and implementation of programs to manage or divest assets, improve operations, reduce costs, and restructure, all subject to the approval of the Company's Board of Trustees.
- Interface with regulatory authorities, community leaders, and organizations.
- Ensure the Company complies with all obligations of the Bankruptcy Code, including, but not limited to, financial reporting to the Court and parties in interest.
- Represent the Company in dealings with statutory committees, their constituencies, and their professionals.
- Assist in such other matters as may be mutually agreed upon.

## Work Product

Our work product will be in the form of:

- Information to be discussed with you and others, as you may direct.
- Written reports and analysis worksheets to support our actions as we deem necessary or as you may request.

## Staffing

Kurron will provide a Chief Restructuring Officer responsible for the overall engagement. The Chief Restructuring Officer will be assisted, as appropriate, by a staff of consultants at various levels, all of whom have a wide range of skills and abilities related to this type of assignment. In addition, Kurron has relationships with and periodically retains independent contractors with specialized skills and abilities. If the Company's Board of Trustees, in its reasonable discretion, is not satisfied with the work of a Chief Restructuring Officer, Kurron will find a suitable replacement.

## Timing, Fees and Expenses

Kurron will commence this engagement immediately upon receipt of a signed engagement letter and receipt of the retainer delineated below.

Dr. Johnnie L. Clark, PhD
September 1, 2004
3

This engagement will be staffed with professionals at various levels, as the tasks require. For purposes of weekly billings, our fees will be based on the hours charged at our hourly rates, which are:

| | |
|---|---|
| Principals | $300 – $350 |
| Senior Associates | $250 – $300 |
| Associates | $200 – $250 |

provided, however, that in no event will the Kurron professional performing the duties of the Chief Restructuring Officer charge in excess of $300 per hour.

In addition to the fees set forth above, the Company shall pay directly, or reimburse Kurron upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment such as travel, lodging, postage, telephone and facsimile charges.

Concurrent with execution of this engagement letter, the Company shall provide Kurron a retainer of $36,000 to be applied against the time charges and expenses specific to the engagement. Kurron will submit weekly invoices for services rendered and expenses incurred as described above. Kurron understands that payment of its fees and expenses must be approved by the Company (which approval shall be prompt and not unreasonably withheld) and the Court. In the event the Company fails to make a scheduled weekly payment to Kurron, Kurron shall offset the retainer by the amount of the unpaid payment. In the event the Company fails to restore the retainer to the $36,000 level within one business day, Kurron shall retain any unused retainer and shall have the right to withdraw service after a determination is made by Kurron that the retainer will be insufficient to cover the value of one-weeks billing. Any unearned portion of the retainer will be returned to the Company, provided that no deficiency in payment to Kurron exists at the termination of the engagement and provided all outstanding invoices have been paid.

Upon approval, fees and expenses will be paid by wire transfer to:

The Credit of Kurron Shares of America, Inc.
c/o Chase Bank
ABA# 021000021
Account# 359 0608493-65

### Relationship of the Parties

The parties intend that an independent contractor relationship will be created by this agreement. Kurron is not to be considered an employee or agent of the company and the employees of Kurron are not entitled to any of the benefits that the Company provides for the Company's employees.

Dr. Johnnie L. Clark, PhD
September 1, 2004

4

The Company also agrees not to solicit or recruit any employees or agents of Kurron for a period of two years subsequent to the completion and/or termination of this agreement.

### Confidentiality

Kurron agrees to keep confidential all information obtained from the Company. Kurron agrees that neither it nor its directors, officers, principals, employees, agents or attorneys will disclose to any other person or entity, or use for any purpose other than specified herein, any information pertaining to the Company or any affiliate thereof which is either non-public, confidential or proprietary in nature ("Information") which it obtains or is given access to during the performance of the services provided hereunder. Kurron may make reasonable disclosures of Information to third parties in connection with their performance of their obligations and assignments hereunder. In addition, Kurron will have the right to disclose to others in the normal course of business its involvement with the Company.

Information includes data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models, or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The Company acknowledges that all advice (written or oral) given by Kurron to the Company in connection with Kurron's engagement is intended solely for the benefit and use of the Company. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks and programs referred to herein or in discussions with the Company's lenders or debt holders, without Kurron's prior approval (which shall not be unreasonably withheld) except as required by law. This agreement will survive the termination of the engagement.

### Framework of the Engagement

The Company acknowledges that it is hiring Kurron purely to assist and advise the Company in business planning and restructuring. Kurron's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA or other such state and national professional bodies.

### Indemnification of Kurron

In engagements of this nature where we act as crisis managers, it is our practice to receive indemnification. Accordingly, in consideration of our agreement to act on your behalf in connection with the engagement, you agree to indemnify, hold harmless, and defend us (including our principals, employees and agents) from and against all claims,

Dr. Johnnie L. Clark, PhD                                 5
September 1, 2004

liabilities, losses, damages and reasonable expenses as they are incurred, including reasonable legal fees and disbursement of counsel, and the costs of our professional time (our professional time will be reimbursed at our rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which we may be required or agree to participate but in which we are not a party. We, our principals, employees and agents may, but are not required to, engage a single firm of separate counsel of our choice in connection with any of the matters to which this indemnification agreement relates. This indemnification agreement does not apply to actions taken or omitted to be taken by us in bad faith or due to our gross negligence or willful misconduct. Additionally, the Company will not be liable under this Indemnification provision for any losses, claims, damages or liabilities (or expenses relating thereto) that have been determined by a court of competent jurisdiction to constitute a breach of our duty of loyalty to the Company.

### Indemnification of Officers

In addition to the foregoing indemnification, the Chief Restructuring Officer shall be deemed to be an officer of the Company and shall, along with any other Kurron personnel who may serve as officers of the Company, be individually covered by the same indemnification and directors' and officers' liability insurance as is applicable to other officers of the Company.

### Termination and Survival

The agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination Kurron will be entitled to any fees and expenses due under the provisions of the agreement.

The obligations of the parties under the Indemnification of Kurron, Indemnification of Officers and Confidentiality sections of this agreement shall survive the termination of the agreement as well as the other sections of this agreement, which expressly provide that they shall survive termination of this agreement.

### No Assignment

This agreement may not be assigned by Kurron, in whole or in part, without the express written consent of the Company.

### Governing Law

This letter agreement is governed by and construed in accordance with the laws of the State of Georgia with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Dr. Johnnie L. Clark, PhD                                6
September 1, 2004

### Disclosures

We know of no fact or situation which would represent a conflict of interest for us with regard to the Company.

While we are not currently aware of any other relationships that connect us to any party in interest, because Kurron is a consulting firm that services clients on a national basis in numerous cases, both in and out of court, it is possible that Kurron may have rendered services to or have business associations with other entities which had or have relationships with the Company, including creditors of the Company. Kurron has not and will not represent the interests of any of these aforementioned entities in this case, involving the Company.

### Severability

If any portion of the letter agreement shall be determined to be invalid or unenforceable, we each agree that the remainder shall be valid and enforceable to the maximum extent possible.

### Entire Agreement

All of the above contains the entire understanding of the parties relating to the services to be rendered by Kurron and may not be amended or modified in any respect except in writing signed by the parties. Kurron will not be responsible for performing any services not specifically described in this letter or in a subsequent writing signed by the parties.

### Notices

All notices required or permitted to be delivered under this letter agreement shall be sent, if to us, to the address set forth at the head of this letter, to the attention of Corbett A. Price, and if to you, to the address set forth above, to the attention of your General Counsel, or to such other name or address as may be given in writing to the other party. Any notice shall be deemed to be given only upon actual receipt.

### Facsimile Signatures

Original signatures of the parties hereto on copies of this agreement, transmitted by facsimile, shall be deemed originals for all purposes hereunder, and such copies shall be binding on the parties hereto.

If these terms meet your approval, please sign and return the enclosed copy of this engagement letter.

Dr. Johnnie L. Clark, PhD	7
September 1, 2004

We look forward to working with you.

Sincerely yours,

Corbett A. Price
President

Acknowledged and Agreed to:

SOUTHWEST HOSPITAL & MEDICAL CENTER

By: *Johnnie J. Clark*

Its: *Chairperson, Board of Trustees*

Dated: *September 8, 2004*

EXHIBIT "B"

## RULE 204 VERIFICATION WITH REGARD TO THE EMPLOYMENT OF CORBETT A. PRICE AND KURRON SHARES OF AMERICA, INC.

The undersigned hereby declares under penalty of perjury:

1.

My name is Arnold I. Katz. I am the CFO and a principal of Kurron Shares of America, Inc. ("Kurron"), with offices located at 700 Hicksville Road, Suite 210, Bethpage, New York 11714. Subject to court approval, I have entered the Engagement Letter with Southwest Hospital and Medical Center, Inc. (the "Debtor). A copy of the Engagement Letter is attached as Exhibit "A" to the Application to which this Verification is attached.

2.

Kurron has been asked to provide services as set forth in the Engagement Letter. Compensation for those services will be paid as set forth in the Engagement Letter based on time expended to render such services and fee schedule contained in the Engagement Letter. Expenses will be charged at actual costs incurred subject to the applicable law.

3.

No agreement exists between Kurron and any other person (other than compensation agreements between Kurron and its employees) for the sharing of compensation to be received by Kurron in connection with services rendered in this case.

4.

To the best of my current knowledge, except as set forth herein, neither I nor any member or employee of Kurron has any connection with the Debtor, creditors, the judge, the United States Trustee, or any employees in the Office of the United States Trustee.

147893.doc

5.

Based upon my knowledge, information, and belief, Kurron and I are disinterested within the meaning of 11 U.S.C. Section 101(14). Neither Kurron nor I represent or hold any interest materially adverse to the Debtor, its estate, or the creditors in regard to the matter upon which Kurron and I are to be engaged. Kurron assisted South Fulton Medical Center, Inc. ("South Fulton") in its restructuring. South Fulton is a creditor of the Debtor. Kurron has not provided services to South Fulton in over a year and has never provided services in connection with South Fulton's relationship with the Debtor.

6.

Due to our past health care experience, persons at Kurron or I may have knowledge of working with providers, physicians, and creditors of the Debtor in previous cases, but we have not worked with such entities or individuals in regard to the bankruptcy case of the Debtor.

7.

The undersigned requests that an order be entered authorizing the retention of Kurron and the undersigned to perform the services referenced in the Engagement Letter. Attached hereto is a firm resume that sets forth our qualifications to provide the service identified in the Engagement Letter.

Dated this 9th day of September, 2004.

KURRON SHARES OF AMERICA, INC.

By: _____

Arnold I. Katz, CFO

147893

## CORBETT A. PRICE

Chairman



*"In most cases, a successful organizational transformation is the result of a strategic, well-balanced combination of financial and operational efficiencies and effective program and relationship development. Health care organizations which achieve this will be prepared for the opportunities created by the turbulence of change."*

Corbett A. Price, Chairman and founder of Kurron, brings over 20 years of executive experience in hospitals and health systems management to the Kurron team. During his career, he has been responsible for the creation and implementation of new operational and financial systems in many hospital facilities. He has successfully repositioned financially distressed health care organizations throughout the country.

Corbett has had extensive experience on the investor-owned side of health care delivery as an executive at one of the nation's largest health care management firms. He rose rapidly through the corporate hierarchy to the rank of Vice President, with responsibility for directing the operations of more than twenty hospitals in five states with a combined work force of 20,000 employees and total annual revenues of nearly one billion dollars. During his tenure, he was instrumental in implementing the "Quality Improvement Process" developed by W. Edward Deming in several hospitals. His corporate activities included working with the Venture Capital Division to evaluate potential investments and exploring health care acquisition and equity opportunities.

Corbett has also had significant experience in managing public sector hospitals. Early in his career, he served as a senior executive of a large urban public hospital which was a major teaching affiliate of a prestigious medical school. More recently, he served as President of a large county health system (comprised of two acute care hospitals, an ambulatory surgery center, an urgi-center, two nursing homes and a psychiatric facility), which achieved financial viability during a successful transition into the private sector.

Corbett received both his Bachelor's and Master's degrees at The Ohio State University. He went on to do postgraduate work at the John Hopkins University and the Medical College of Virginia.

A recognized expert in health care management, Corbett has advised the governments of Mexico, Barbados and Jamaica on health care delivery systems and facilities.



PARTNERS IN CHANGE

### ARNOLD I. KATZ

C.P.A., Principal



*"For hospitals to continue to serve their communities, they must first survive. The cornerstone of this service is wise stewardship of financial and human resources, allowing the organization to respond to their constituents' needs both now and in the future."*

Arnold I. Katz, Principal and Chief Financial Officer of Kurron, has more than 20 years of senior management experience in both public and private health care systems, including fiscal and operations management, capital financing and corporate development. His special expertise is in financial turnaround assignments in hospitals, nursing homes and health systems.

Arnie has served as Chief Financial Officer of various hospitals and multi-hospital systems in the New England and Mid-Atlantic regions and has worked for several health care management firms where he was responsible for the financial turnaround and management of hospitals ranging from 100-bed rural facilities to 700-bed public institutions.

Prior to joining Kurron, Arnie was the Senior Vice President and Chief Financial Officer of a three-entity health care system in New England where he took the system from a significant loss to a profitable situation, implemented a Total Quality Management process, and effected a $36 million capital financing ... all while reconfiguring programs and services. Prior to that position, Arnie was the Executive Vice President of an 850-bed, $200 million multi-hospital system near Washington, DC.

Arnie, a native of New York, holds a Master's in Business Administration from St. Joseph's University. He is a Fellow of the Hospital Financial Management Association, a Diplomate of the American College of Health Care Executives, and a Certified Public Accountant.



KURRON
PARTNERS IN CHANGE

• • • • • • • • • • • • • • • • • • • • • • • • • • •

350 Fifth Avenue, Suite 3304 • New York, NY 10118 • (212) 281-8443 • FAX: (212) 281-6443

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has served a true and correct copy of the foregoing APPLICATION TO APPROVE EMPLOYMENT OF CORBETT A. PRICE AS CHIEF RESTRUCTURING OFFICER (THE "CRO") FOR THE DEBTOR AND KURRON SHARES OF AMERICA, INC. TO ASSIST THE CRO by depositing same in the United States mail in a properly addressed envelope with adequate postage thereon to:

> Office of the U.S. Trustee
> 362 Richard B. Russell Federal Bldg.
> 75 Spring Street, S.W.
> Atlanta, Georgia 30303

This 9th day of September, 2004

> /s/ G. Frank Nason, IV
> G. Frank Nason, IV

3343 Peachtree Road, NE
East Tower, Suite 550
Atlanta, Georgia 30326
(404) 262-7373